**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

NERON DOZIER,

                                        Plaintiff,

            - v -                                            Civ. No. 9:05-CV-127
                                                                    (NAM/RFT)
SGT. C.O. CHAPMAN; SGT. C.O. MILLER;
THOMAS RICKS, *Superintendent*;
PAULINE POWERS, *Nurse*,

                                        Defendants.


**APPEARANCES:**                              **OF COUNSEL:**

NERON DOZIER
Plaintiff, *Pro se*
01-A-3845
Auburn Correctional Facility
Auburn, NY 13021

HON. ANDREW M. CUOMO                      HEATHER R. RUBINSTEIN, ESQ.
Attorney General for the State of New York    Assistant Attorney General
Attorney for Defendants
615 Erie Boulevard West
Suite 102
Syracuse, NY 13204


**RANDOLPH F. TREECE**
**United States Magistrate Judge**

                    **REPORT-RECOMMENDATION and ORDER**

        *Pro se* Plaintiff Nelson Dozier brings this civil rights action, pursuant to 42 U.S.C. § 1983,

alleging that the Defendants violated his constitutional rights as secured by the First, Eighth, and

Fourteenth Amendments.  Dkt. No. 33, Am. Compl.  Presently before the Court is Defendants'

Motion for a Judgment on the Pleadings brought pursuant to FED. R. CIV. P. 12(c).  Dkt. No. 59.

Plaintiff opposes the Motion.  Dkt. No. 61.  For the reasons that follow, it is recommended that

Defendants' Motion be **GRANTED** in part and **DENIED** in part.

## I. BACKGROUND

The following facts are derived from the Plaintiff's Amended Complaint, which must be taken as true for the purpose of deciding the instant Motion for Judgment on the Pleadings.

Plaintiff was an inmate at Upstate Correctional Facility ("Upstate") at all times pertinent to the present action. Dkt. No. 33, Am. Compl. at ¶ 1. On August 13, 2001, Plaintiff was seen by Upstate medical staff for pain in his right hand and thumb, and as a result the Program Committee was notified that he required a "light job" while awaiting an orthopedic consultation; he was also given a bottom bunk permit because he weighed 300 pounds and had a fracture in his right hand. *Id.* at ¶¶ 2 & 40. On February 4, 2002, Defendant Sergeant (Sgt.) Chapman ordered two Corrections Officers to force Plaintiff to take a top bunk even after Plaintiff showed Chapman his bottom bunk permit, which was issued for a period of one year starting on August 13, 2001. *Id.* at ¶¶ 3-7. Plaintiff filed a Grievance against Chapman on February 10, 2002, for forcing him to take the top bunk. Chapman asserted in response to that Grievance that he had called the facility hospital and was told by the medical staff that Plaintiff was no longer on a bottom bunk placement. *Id.* at ¶ 8. On February 15, 2002, Plaintiff fell off the top bunk, injuring his back, neck, head, and right shoulder, and was temporarily paralyzed from the waist down. *Id.* at ¶ 9.

After his fall, Plaintiff was placed on a stretcher and brought to the facility hospital and from there to the emergency room of Alice Hyde Medical Center, an outside hospital. *Id.* at ¶ 10. An MRI conducted at Alice Hyde on February 16, 2002, showed indications of degenerative disk

disease[1] ("DDD") and moderate disk herniation in Plaintiff's back.  *Id.* at ¶ 13. Also on February

16th,  Plaintiff was transferred from Alice Hyde to the spine unit at Albany Medical Center where

he had another MRI of his spine taken.  *Id.* at ¶ 14.  On February 19th, Plaintiff returned to Upstate,

and on February 26th, filed another Grievance against Sgt. Chapman for forcing him to take the top

bunk.  *Id.* at ¶ 16.

On February 27, 2002, Chapman, who was on the Program Committee, told the other civilian

members of that Committee to assign Plaintiff a mess-hall job, an order the Committee members

complied with.  *Id.* at ¶¶ 17-18.  Plaintiff filed a Grievance against Chapman and the Program

Committee on March 1, 2002.  *Id.* at ¶ 19.  On March 1st, Plaintiff complained to Defendant Nurse

Pauline Powers about pain and his inability to work in the mess-hall, but Powers told him he was

able to work and recommended weight loss for his back pain.  *Id.* at ¶ 21.  Powers' action prompted

Plaintiff to file a Grievance against her on March 1st for "refusing to properly document [Plaintiff's]

concerns and complaints."  *Id.* at ¶ 20.  Plaintiff was seen by Powers again on March 4th, who, after

conducting an assessment that consisted of "a mere look at Plaintiff," again advised Plaintiff to lose

weight and suggested exercise for his back pain.  *Id.* at ¶ 22.  On March 5th, an order was issued by

Upstate medical staff, who Plaintiff does not identify by name in the Amended Complaint, stating

that as of that date Plaintiff was not to work in the mess-hall, participate in sports, or go to the gym.

*Id.* at ¶ 23.

Plaintiff's Grievances were denied on appeal by Defendant Superintendent Ricks.  *Id.* at ¶¶

---

[1] Degenerative Disc Disease (DDD) is "not really a disease but a term used to describe the normal changes in your spinal discs as you age. . . [It] can take place throughout the spine, but it most often occurs in the discs in the lower back (lumbar region) and the neck (cervical region)."  Information *available at* www.webmd.com.  DDD involves the break down or degeneration of the spinal disks caused by the loss of fluid in the discs or tiny cracks or tears in the outer layer of a disc.  *Id.*  DDD can result in back or neck pain, depending on the location of the affected disc.  *Id.*

28, 35, & 43.

## II. DISCUSSION

### A. Standard of Review

On a motion to dismiss, the allegations of the complaint must be accepted as true. *See Cruz v. Beto*, 405 U.S. 319, 322 (1972). The trial court's function "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980). "[T]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

"Generally, in determining a 12(b)(6) motion, the court may only consider those matters alleged in the complaint, documents attached to the complaint, and matters to which the court may take judicial notice." *Spence v. Senkowski*, 1997 WL 394667, at *2 (N.D.N.Y. July 3, 1997) (citing *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991)). Moreover, "even if not attached or incorporated by reference, a document 'upon which [the complaint] *solely* relies and which is *integral to the complaint*' may be considered by the court in ruling on such a motion." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (emphasis added).

The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *See Retail Clerks Intern. Ass'n, Local 1625, AFL-CIO v. Schermerhorn*, 373 U.S. 746, 753 n. 6 (1963); *see also Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008). Nevertheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, __ U.S. __, 129

S. Ct. 1937, 1949 (2009).  Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id*. (citation omitted).

A motion to dismiss pursuant to Rule 12(b)(6) may not be granted so long as the plaintiff's complaint includes "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, __ U.S. __ ,129 S.Ct. at 1950 (citing *Twombly*).[2]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. at 1949.  This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.  Thus, in spite of the deference the court is bound to give to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts which [he or she] has not alleged, or that the defendants have violated the . . . laws in ways that have not been alleged." *Assoc. Gen. Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983).  The process of determining whether a plaintiff has "nudged [his] claims . . . across the line from conceivable to plausible," entails a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. at 1950-51.

---

[2] By its opinion in *Bell Atlantic Corp. v. Twombly* and then again in *Ashcroft v. Iqbal*, the Supreme Court abrogated the often-cited language of *Conley v. Gibson* "that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 562-63 (2007) (quoting *Conley*, 355 U.S. 41, 45-46, 78 S.Ct. 99 (1957)).  In so doing, the Court found that *Conley* "described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival." *Id*. at 563.

### B. Eighth Amendment Claims

1. *Claims against Chapman*

Plaintiff claims that Defendant Chapman violated his Eighth Amendment rights when he (1) assigned Plaintiff to the top bunk in his cell and (2) directed the Program Committee to assign Plaintiff to work in the mess-hall.  Am. Compl. at ¶¶ 7, 17, & 42.

In order to state a valid conditions of confinement claim under the Eighth Amendment, a plaintiff must allege: (1) the conditions were so serious that they constituted a denial of the "minimal civilized measure of life's necessities," and (2) the prison officials acted with "deliberate indifference." *Wilson v. Seiter*, 501 U.S. 294, 297-99 (1991) (citation omitted) (cited in *Branham v. Meachum*, 77 F.3d 626, 630-31 (2d Cir. 1996)).

Here, Plaintiff alleges that on February 4, 2002, Chapman forced him to take the top bunk in his cell despite Plaintiff's protestations and production of a bottom bunk permit, and then ordered the Program Committee to assign Plaintiff to work in the mess-hall.  Am. Compl. at ¶¶ 7 & 17.  Plaintiff does not allege that Defendant Chapman had knowledge of his weight or wrist injury prior to his order that Plaintiff occupy the top bunk.  In fact, Plaintiff states that Chapman "said that he call[ed] the facility hospital, and was [] told by medical [] that plaintiff was not on a bottom bunk placement order any longer."  *Id.* at ¶ 8.  Furthermore, even if Chapman did know of Plaintiff's alleged wrist and weight problems, his placement of Plaintiff on the top bunk would still not rise to the level of deliberate indifference because there is no allegation or indication that Chapman was or should have been put on notice that Plaintiff was likely to fall and injure himself.

With respect to Plaintiff's claim that Chapman violated his Eighth Amendment rights on or about February 27, 2002, by ordering the Program Committee to assign Plaintiff to work in the

mess-hall, he has failed to allege that Chapman had knowledge of the injuries he allegedly suffered as a consequence of his fall from the top bunk on February 15th, nor that Chapman knew Plaintiff was incapable of performing work without experiencing pain.  Furthermore, being relegated to the top bunk, notwithstanding any back pain, does not constitute a denial of the minimal civilized measure of life's necessities, nor does the record indicate that Chapman acted with deliberate indifference in that respect.  Therefore, Chapman's alleged orchestration of Plaintiff's work assignment in the mess-hall and assignment of Plaintiff to the top bunk do not state valid claims of deliberate indifference under the Eighth Amendment.

For these reasons, it is recommended that the aforementioned claims against Chapman be **dismissed.**

### 2. *Claims against Powers*

Plaintiff alleges that Defendant Nurse Powers violated his Eighth Amendment rights when she failed to properly examine him and then certified his physical ability to work in the mess-hall. Am. Compl. at ¶¶ 20-22.  Plaintiff asserts that Powers had knowledge that

> plaintiff was over 300 lbs in weight, had knowledge of plaintiff's injury after falling from [the] top bunk [].  And deliberately refuse[d] to properly document [Plaintiff's] concerns and [request for a] referral to a doctor but made her own [assessment] [] stating nothing was wrong and plaintiff could work.  This was in violation of plaintiff['s] constitutional right to be free from cruel and unusual punishment and deliberate indifference.  But her objective was to protect her co-worker's and disregard plaintiff['s] serious medical need that was later corrected in part.

*Id.* at ¶ 41.

Thus, Plaintiff claims that Powers intentionally refused to properly treat him and document his complaints because she was protecting Chapman, who Plaintiff alleges improperly assigned Plaintiff to the top bunk and to work in the mess hall.  *Id.* at ¶ 22 (stating that Powers sought to "cover for the wrong doing that was committed by Sgt. Chapman").

To state a claim for denial of medical care, a prisoner must demonstrate (1) a serious medical condition and (2) deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 834-35 (1994); *Hathaway v. Coughlin ("Hathaway I")*, 37 F.3d 63, 66 (2d Cir. 1994). The first prong is an objective standard and considers whether the medical condition is sufficiently serious. The Second Circuit has stated that a medical need is serious if it presents "'a condition of urgency' that may result in 'degeneration' or 'extreme pain.'" *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Hathaway I*, 37 F.3d 63, 66 (2d Cir. 1994)). Among the relevant factors to consider are "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d at 702 (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992)).

The second prong is a subjective standard requiring a plaintiff to demonstrate that the defendant acted with the requisite culpable mental state similar to that of criminal recklessness. *Wilson v. Seiter*, 501 U.S. at 301-03; *Hathaway I*, 37 F.3d at 66. A plaintiff must demonstrate that the defendant acted with reckless disregard to a known substantial risk of harm. *Farmer v. Brennan*, 511 U.S. at 836. This requires "something more than mere negligence . . . but something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 835; *see also Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996) (citing *Farmer*). Further, a showing of medical malpractice is insufficient to support an Eighth Amendment claim unless "the malpractice involves culpable recklessness, i.e., an act or a failure to act by the prison doctor that evinces 'a conscious disregard of a substantial risk of serious harm.'" *Chance v. Armstrong*, 143 F.3d at 702 (quoting *Hathaway v. Coughlin ("Hathaway II")*, 99 F.3d 550, 553 (2d Cir. 1996)); *see*

*also Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) (citations omitted).

Considering first whether Plaintiff possessed a serious medical need at the time Powers saw him in March 2002, Plaintiff has alleged that on February 15, 2002, he fell from the top bunk and was temporary paralyzed from the waist down, had moderate herniated disks in his back, and was diagnosed at the hospital with DDD.  Plaintiff alleges that he complained of back pain to Powers, and that due to her assessment of his medical condition, he was made to work in the mess-hall from March 1-4, 2002.  Am. Compl. at ¶¶ 17 & 21-22.  We find that these allegations, construed in a light most favorable to Plaintiff, constitute a sufficient facial claim under the objective prong of the Eighth Amendment standard.  *See Faraday v. Lantz,* 2005 WL 3465846, at *5 (D. Conn. Dec. 12, 2005) (denying summary judgment on objective prong when the record showed that plaintiff suffered from "lower back pain caused by herniated, migrated discs, sciatica, severe pain walking downstairs, [] pain and stiffness when he gets out of bed" as well as DDD); *Mendoz v. McGinnis*, 2008 WL 4239760, at *10 (N.D.N.Y. Sept. 11, 2008) (holding that "a reasonable factfinder could find that [plaintiff's DDD] condition constitutes a serious medical need").

Furthermore, Plaintiff has also succeeded in stating a facial claim of deliberate indifference against Powers.  Plaintiff alleges that Powers was aware of his serious medical conditions when she saw him on March 1 and 4, 2002, but disregarded his conditions and approved him for work in the mess-hall in an effort to cover-up Defendant Chapman's allegedly improper top bunk and mess-hall assignments.  Finally, Plaintiff alleges that on March 5, 2002, Powers' decision to approve his work duty was overruled by someone else on the Upstate medical staff, who restricted Plaintiff from working, participating in sports, or going to the gym.  Am. Compl. at ¶ 23.  These allegations are sufficient to withstand Defendants' Motion for a Judgment on the Pleadings.  *See Sanchez v.*

*Taggart*, 144 F.3d 1154, 1156 (8ᵗʰ Cir. 1998) (denying summary judgment when evidence established plaintiff, who had herniated disks in his back, "was compelled to perform labor beyond his physical capacity that endangered his health").

Therefore it is recommended that Plaintiff's Eighth Amendment claims against Powers not be dismissed.

### C.   Retaliation Claims

The Second Circuit has stated that courts must approach prisoner retaliation claims "with skepticism and particular care," since "virtually any adverse action taken against a prisoner by a prison official - even those otherwise not rising to the level of a constitutional violation - can be characterized as a constitutionally proscribed retaliatory act." *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001) (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) & *Franco v. Kelly*, 854 F.2d 584, 590 (2d Cir. 1988)), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

In order to prevail on a retaliation claim, a plaintiff bears the burden to prove that (1) he engaged in constitutionally protected conduct; (2) prison officials took an adverse action against him; and (3) a causal connection exists between the protected speech and the adverse action. *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003) (citations omitted); *see also Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (citation omitted).

A plaintiff may meet the burden of proving an inappropriate retaliatory motive by presenting circumstantial evidence of a retaliatory motive, such as temporal proximity, thus obviating the need for direct evidence. *Bennett v. Goord*, 343 F.3d at 138-39 (holding that plaintiff met his burden in proving retaliatory motive by presenting circumstantial evidence relating to, *inter alia*, the temporal

proximity of allegedly false misbehavior reports and the subsequent reversal of the disciplinary charges on appeal as unfounded).  Other factors that can infer an improper or retaliatory motive include the inmate's prior good disciplinary record, vindication at a hearing on the matter, and statements by the defendant regarding his motive for disciplining plaintiff.  *McEachin v. Selsky*, 2005 WL 2128851, at *5 (N.D.N.Y. August 30, 2005) (citing *Colon v. Coughlin*, 58 F.3d 865, 872-73 (2d Cir. 1995)).

Moreover, "in the prison context [the Second Circuit has] previously defined 'adverse action' *objectively*, as retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights.'"  *Gill v. Pidlypchak*, 389 F.3d at 381 (quoting *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003) (emphasis in original).  This objective test will apply even though a particular plaintiff was not himself deterred.  *Id.*  If the plaintiff can carry that burden, the defendants will still be entitled to summary judgment if they can show, by a preponderance of the evidence, that they would have taken the same action in the absence of the prisoner's First Amendment activity.  *Davidson v. Chestnut*, 193 F.3d 144, 148-49 (2d Cir. 1999); *see Hynes v. Squillace*, 143 F.3d 653, 657 (2d Cir. 1998); *Lowrance v. Achtyl*, 20 F.3d 529, 535 (2d Cir. 1994).

The Supreme Court has noted that the right to petition government for redress of grievances is "among the most precious of the liberties safeguarded by the Bill of Rights."  *See United Mine Workers of Am., Dist. 12 v. Illinois State Bar Ass'n*, 389 U.S. 217, 222 (1967).  The Second Circuit has held that within the prison context, "inmates must be 'permit[ted] free and uninhibited access . . . to both *administrative and judicial* forums for the purpose of seeking redress of grievances against state officers.'"  *Franco v. Kelly*, 854 F.2d at 589 (quoting *Haymes v. Montanye*, 547 F.2d

*-11-*

188, 191 (2d Cir. 1976)) (emphasis and alterations in original).

1. *Retaliation Claims against Chapman*

Plaintiff alleges that Defendant Chapman retaliated against him when he (1) assigned Plaintiff to the top bunk; and (2) arranged for Plaintiff to work in the mess-hall. Am. Compl. at ¶¶ 16-17. Liberally construing the Amended Complaint with respect to Plaintiff's first retaliation claim against Chapman, Plaintiff alleges that Chapman assigned him to the top bunk in retaliation for a Grievance Plaintiff filed on February 10, 2002. *Id.* at ¶ 8.  However, Plaintiff avers that Chapman ordered him to take the top bunk on February 4, 2002, several days before he filed the Grievance. *Id.* at ¶ 3. Thus, Plaintiff's February 10th Grievance could not have possibly been the motivation for Chapman's alleged retaliatory order that he take the top bunk, which occurred on February 4th. Therefore, it is recommended that this claim be **dismissed**.

With respect to Plaintiff's second retaliation claim against Chapman, it is alleged that Chapman ordered the Program Committee to assign Plaintiff to work in the mess-hall on or about February 27, 2002. Plaintiff alleges that this assignment was precipitated by the Grievances he filed against Chapman on February 10 and 26, 2002. *Id.* at ¶¶ 8 & 16. As noted above, the filing of grievances is conduct protected by the First Amendment. Plaintiff alleges that he was forced to work in the mess-hall with herniated disks in his back for a period of three days, causing him pain. Am. Compl. at ¶ 21. However, as previously noted, Plaintiff has not alleged that Chapman was aware of his injuries or that by ordering Plaintiff to work in the mess-hall he was exposing him to physical pain. Thus, Plaintiff has failed to allege that Chapman took an adverse action against him, and for that reason this retaliation claim should also be **dismissed**.

*-12-*

2. *Retaliation Claim against Powers*

Plaintiff alleges that Nurse Powers' assessment that he was able to work in the mess-hall was made in retaliation for actions Plaintiff had taken against Defendant Chapman, and in an attempt to cover-up for the alleged improper bunk assignment that preceded his fall and the injuries that it caused.  Am. Compl. at ¶¶ 20-22.

Plaintiff alleges that after he met with Powers on March 1, 2002, and she approved him for work in the mess-hall, he submitted a Grievance against her on that date, alleging that Powers "deliberately refus[ed] to properly document all [his] concerns and complaints."  *Id.* at ¶ 20.  Because that Grievance was filed after Powers approved Plaintiff for work, it could not have been the motivation for that approval.  Plaintiff also alleges that Powers approved him for mess-hall duty in retaliation for the aforementioned Grievances Plaintiff filed against Chapman, but there is no allegation as to why Powers would be motivated to retaliate against Plaintiff for grievances he filed against another official.  Plaintiff's conclusory claims that Powers was attempting to "cover" for Chapman's alleged unconstitutional acts does not help to answer that question.  Thus, Plaintiff has failed to plead a plausible causal connection between the alleged protected act, filing grievances against Chapman, and Powers' alleged adverse action of approving him to work in the mess-hall.  Therefore, it is recommended that this claim be **dismissed**.

**D.  Due Process**

Plaintiff's lone due process claim is that Defendant Superintendent Ricks took two months to investigate his grievances and that such investigations were done improperly.  Am. Compl. at ¶ 43.  To the extent Plaintiff is alleging that Ricks' delay in processing his Grievance constitutes a constitutional violation, that claim must be dismissed because "inmate grievance programs created

by state law are not required by the Constitution and consequently allegations that prison official

violated [grievance] procedures do [] not give rise to a cognizable § 1983 claim." *Shell v. Brzezniak*,

365 F. Supp. 2d 363, 370 (W.D.N.Y. 2005) (citations omitted); *see also Carroll v. Callahan,* 2007

WL 965435, at *6 (N.D.N.Y. Mar. 30, 2007).  Therefore, it is recommended that Plaintiff's due

process claim be **dismissed**.

### E.  Personal Involvement

The Second Circuit has held that "personal involvement of defendants in alleged

constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*,

21 F.3d 496, 501 (2d Cir. 1994) (citations omitted).  Moreover, "the doctrine of *respondeat superior*

cannot be applied to section 1983 actions to satisfy the prerequisite of personal involvement." *Kinch*

*v. Artuz*, 1997 WL 576038, at *2 (S.D.N.Y. Sept. 15, 1997) (citing *Colon v. Coughlin*, 58 F.3d 865,

874 (2d Cir. 1995) & *Wright v. Smith*, 21 F.3d at 501) (further citations omitted).  Thus, "a plaintiff

must plead that each Government-official defendant, through the official's own individual actions,

has violated the constitution." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1948 (2009)

Nevertheless, if a plaintiff seeks to bring a § 1983 action for supervisory liability, liability

on the part of the supervisor may exist

> in one or more of the following ways: 1) actual direct participation in the
> constitutional violation, 2) failure to remedy a wrong after being informed through
> a report or appeal, 3) creation of a policy or custom that sanctioned conduct
> amounting to a constitutional violation, or allowing such a policy or custom to
> continue, 4) grossly negligent supervision of subordinates who committed a
> violation, or 5) failure to act on information indicating that unconstitutional acts were
> occurring.

*Hernandez v. Keane*, 341 F.3d 137, 145 (2d Cir. 2003) (citing *Colon v. Coughlin*, 58 F.3d at 873)

(further citations omitted).

Plaintiff brings claims against Defendant Superintendent Ricks, alleging that he became

*-14-*

aware of his alleged constitutional violations when he reviewed and rejected Grievances Plaintiff filed, and then failed to remedy the situation.  Am. Compl. at ¶¶ 35, 43, & 50.  Because we have recommended that some of Plaintiff's underlying claims not be dismissed, it would be premature to dismiss Ricks at this stage of the litigation with respect to those surviving claims.

Although Sgt. C.O. Miller is named as a Defendant in this action, Plaintiff does not make clear in the Amended Complaint what actions, if any, Miller took against him.  The only discernable allegations against Miller is that he was made aware of Plaintiff's confidential medical information and that he "covered" for the actions of Chapman.  Am. Compl. at ¶ 45.  These conclusory allegations are insufficient to state a valid claim against Miller.  *See Bell. Atl. Corp. v. Twombly*, 550 U.S. at 545 (stating that a valid claim must have enough factual allegations "to raise a right to relief above the speculative level").   Therefore, it is recommended that Plaintiff's claims against Miller be **dismissed**.

### III.  CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that the Defendants' Motion for a Judgment on the Pleadings (Dkt. No. 59) be **GRANTED in part** and **DENIED in part**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y*

*-15-*

*of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R.

CIV. P. 72, 6(a), & 6(e).


Date:   September 1, 2009
        Albany, New York

RANDOLPH F. TREECE
United States Magistrate Judge